**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL LORD,<br><br>Plaintiff,<br><br>v.<br><br>PRIME HEALTHCARE SERVICES, INC.,<br><br>Defendant. | No. 26 CV 5569<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Lord worked for Ascension Saint Joseph Hospital when defendant Prime Healthcare Services began acquiring all hospitals in the Ascension network in Illinois. As part of the acquisition, plaintiff was required to reapply for his position. Lord alleges that, as a condition of his continued employment, defendant required him to answer questions regarding his family medical history, violating the Illinois Genetic Information Privacy Act. Defendant moves to compel arbitration and stay proceedings on the grounds that a valid and enforceable agreement to arbitrate exists. For the reasons discussed below, the motion is granted.

## I. Legal Standards

The Federal Arbitration Act directs a federal district court to compel arbitration when there is (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *See* 9 U.S.C. § 4; *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024). Where a court has determined that the parties agreed to arbitrate the issues at hand, it must

compel arbitration and "on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). Courts review motions to compel arbitration under a standard analogous to summary judgment. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The party opposing arbitration must raise an issue of material fact about whether the parties are bound by contract to arbitrate. *Id.*

## II. Background

The Illinois Genetic Information Privacy Act prohibits employers from soliciting, requesting, requiring, or purchasing genetic information of an individual or their family members as a condition of employment. [9] ¶ 17 (citing 410 ILCS 513/25(c)(1)).[1]

In 2023, plaintiff Michael Lord began working as a Registered Nurse at Ascension Saint Joseph Hospital in Elgin, Illinois. [9] ¶ 28. In 2025, defendant Prime Healthcare Services, Inc. acquired eight Illinois hospitals in the Ascension system, including Saint Joseph Hospital. [9] ¶ 29. Before the sale closed, defendant began transitioning employees of these hospitals to employment with Prime Healthcare. [9]

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The facts are taken from the first amended class action complaint, [9]. The court has subject-matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2): defendant is a corporation organized and with its principal place of business in California, [9] ¶ 9, plaintiff is a citizen of Illinois, [9] ¶ 8, and the aggregate claims of all members of the proposed class are in excess of $5,000,000, [9] ¶ 13.

¶ 9. In order to keep his job following the acquisition, plaintiff was required to reapply for employment with defendant. [9] ¶ 29.

Plaintiff alleges that, as a condition of employment, Prime Healthcare required him to submit to a physical examination and drug test and provide sensitive personal information. [9] ¶ 30. Defendant also solicited information concerning his family medical history, including whether his family members had a history of cancer, heart disease, or other medical conditions. [9] ¶ 30. In response, plaintiff disclosed his genetic information. [9] ¶ 31.

Lord alleges that Prime Health violated GIPA by requesting protected genetic information as part of this application process and seeks to represent a class of plaintiffs. [9] ¶¶ 45–57. Defendant moves to compel arbitration on the grounds that a valid and enforceable agreement to arbitrate exists. [14]. In support of its argument, defendant attaches the challenged arbitration agreement. [14-1] at 6–11. The agreement states: "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, validity, scope, applicability, enforceability, or waiver of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." [14-1] at 8.

## III. Analysis

Plaintiff argues that defendant fails to prove an agreement to arbitrate and that, alternatively, if it exists, the proffered agreement would be unenforceable.

### A. Formation

The question of whether the parties formed a valid agreement to arbitrate cannot be delegated. *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate."); *Tinder*, 305 F.3d at 735 ("A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate. But if the district court determines that the making of the arbitration agreement is seriously disputed, the court shall proceed summarily to the trial thereof.") (citation omitted).

Plaintiff does not deny signing the arbitration agreement. Though he asserts that he does "not have a specific memory of reading, signing, or agreeing to any arbitration agreement," [19-1] ¶ 8, he also recounts being "placed before a computer terminal and presented with numerous documents and forms to complete." [19-1] ¶ 6. His timeline of events is consistent with that of the signed forms included by defendant. There is no genuine dispute of fact over whether Lord signed the agreement. *See Tinder*, 305 F.3d at 736.

Plaintiff also argues that I should disregard the declaration of defendant's Chief Financial Officer because it is not based on personal knowledge. [19] at 5–7. Where an affiant's declarations are based on his personal knowledge after reviewing business records, the statements at issue can be considered. *See, e.g.*, *Arora v. Midland Credit Mgmt., Inc.*, 2023 WL 143199, at *2 (N.D. Ill. Jan. 10, 2023). Whether the CFO was present in the room when Lord signed the agreement does not detract

from his knowledge that Lord was required to execute a Mutual Agreement to Arbitrate as part of defendant's preemployment application process. [14-1] at 3.

And plaintiff does not undermine the authenticity of the signed agreement. True, the burden is on defendant to present evidence sufficient to authenticate the arbitration agreement. But the bar for authentication of an arbitration agreement is not high: the proponent need only produce "evidence sufficient to support a finding that the matter in question is what the proponent claims." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001).

Here, beyond the executed agreement itself, defendant submitted two declarations describing its preemployment process and requirement that prospective employees execute an arbitration agreement. [14-1] at 2–4; [20-1]. Defendant also attached plaintiff's other application materials, including his employment application, and an audit trail showing that the application was completed within a few minutes of the arbitration agreement. [20-3]; [20-5]. Defendant's evidence is distinguishable from that in *Pearson v. United Debt Holdings, LLC*, 123 F.Supp.3d 1070 (N.D. Ill. 2015), where the attached agreement was not signed and no witness affirmed that the relevant documents were found in defendant's business records. Defendant has met its burden of authenticating the arbitration agreement and plaintiff has not responded with evidence to create a genuine dispute of material fact over the agreement's authenticity.[2]

[2] Plaintiff also contends that defendant failed to attribute the signature appearing on the arbitration agreement to plaintiff. [19] at 8. But as discussed above, plaintiff does not actually deny signing the agreement nor suggest that the signature was fraudulent. His argument

### B. Issues of Arbitrability

Plaintiff next argues that even if he signed a valid arbitration agreement, it is unenforceable because it is unconscionable as well as void under the Illinois Workplace Transparency Act. [19] at 10–15. Defendant responds that these questions of validity are delegated to the arbitrator and not subject to review by the court. [20] at 7. The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2020). Here, the arbitration agreement makes clear that the arbitrator "shall have exclusive authority" over disputes "relating to the interpretation, validity, scope, applicability, enforceability, or waiver" of the agreement. [14-1] at 8.

Unlike the question of formation, threshold arbitrability questions may be delegated to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *see Bernal v. Kohl's Corp.*, 174 F.4th 573, 578, 580 (7th Cir. 2026) (distinguishing between gateway questions, such as whether the parties have agreed to arbitrate, and procedural questions, which "arise only after the question of the arbitrability of the dispute has been resolved in favor or arbitration"). Because the parties clearly and unmistakably delegated to the arbitrator the sole authority to decide issues of enforceability, plaintiff's challenges to the agreement's enforceability must be determined by the arbitrator. *Henry Schein*, 586 U.S. at 69.

---

that the agreement is unconscionable goes to the enforceability of the agreement and not to its formation. Defendant has produced sufficient evidence showing that the electronic signature could only have been completed by an individual with access to the link sent to plaintiff's email address. [20-1] ¶¶ 9–10. And the timing of the agreement's execution—in quick succession with the timing of Lord's employment application—further supports my conclusion that plaintiff executed the agreement.

Even if the authority to consider threshold issues were not delegated, the agreement is not unenforceable. Plaintiff first argues that the arbitration agreement is both procedurally and substantively unconscionable. [19] at 10–13. Lord contends that he was "ambushed" in the middle of his shift and had no opportunity to negotiate the terms of the agreements he was signing. [19] at 10 (citing [19-1]). "Procedural unconscionability exists when a contract term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware that he or she was agreeing to it." *Zuniga v. Major League Baseball*, 196 N.E.3d 12, 20 (Ill. App. Ct. 2021). Here, "Mutual Agreement to Arbitrate" was bolded, underlined, and capitalized at the top of the form signed by plaintiff. [14-1] at 6. There was nothing illegible or unfairly confusing about the form signed by plaintiff.

With respect to substantive unconscionability, plaintiff contends that the agreement's terms were impermissibly one-sided. [19] at 12.[3] "[A] contract is substantively unconscionable when a clause or term in the contract is totally one-sided or harsh." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 794 (7th Cir. 2014); *see also Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778 (7th Cir. 2014) ("Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and

[3] Plaintiff also contends that he was never provided with a copy of the signed agreement, and that this in turn cuts against the "supposed mutuality of the agreement." [19] at 12. But plaintiff cites no authority suggesting that a company's failure to provide its employee with a copy of an arbitration agreement is sufficient to convert a mutual arbitration agreement into an oppressive one.

rights imposed by the bargain, and significant cost-price disparity." (citation omitted)).

Here, plaintiff argues that the agreement was limited to claims that would be brought exclusively by plaintiff (as opposed to by defendant). [19] at 12. But this is a mischaracterization of the agreement, which covers breach of contract and disclosure of trade secrets claims that would just as likely arise in the context of defendant suing plaintiff (rather than the other way around). [14-1] at 7. The cases cited by plaintiff do not suggest otherwise. In *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill.App.3d 20, 28 (2005), for example, the court noted that the defendant exempted itself from arbitration for "a host of issues, primarily those dealing with the recoupment of money from the plaintiff." In *Hwang v. Pathway LaGrange Prop. Owner, LLC*, 260 N.E.3d 99, 110 (Ill. App. Ct. 2024), the court explained that a confidentiality clause, a provision prohibiting punitive damages, and a damages cap—when paired with a one-sided arbitration obligation—rendered the arbitration agreement unconscionable. The asymmetry present in *Vassilkovska* and *Hwang* is not present here.

Lord also points to the class-action waiver as evidence of the agreement's one-sided nature. [19] at 12. Under Illinois law, a class-action waiver will not be held substantively unconscionable if the plaintiff "had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim asserted in a cost-effective manner." *Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 41

(2006). The *Kinkel* court considered the fact that the costs of arbitration were not disclosed to the plaintiff and noted that the nature of the claim was difficult for a customer to discern and litigate because it was based on an unreasonably large liquidated damages provision. 223 Ill.2d at 39–40.

Here, the cost of arbitration is clear. *See* [14-1] at 9 ("Cost of Arbitration" section). Plaintiff's financial responsibility is capped at the amount of filing or initial appearance fees applicable in court. [14-1] at 9. As the party seeking to avoid arbitration, plaintiff bears the burden of providing "individualized evidence" that arbitration is cost prohibitive. *See Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). Plaintiff has not satisfied this burden.[4]

Finally, plaintiff argues that the Federal Arbitration Act does not apply to the arbitration agreement at issue. [19] at 13–15. Section 2 of the FAA covers arbitration agreements involving commerce. 9 U.S.C. § 2. Plaintiff contends that his preemployment application and arbitration agreement did not actually involve interstate commerce because all of the relevant events occurred in Illinois. [19] at 14. But the phrase "involving commerce" is interpreted broadly. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Aside from the fact that the arbitration agreement expressly provides that it is governed by the FAA, the agreement also notes that defendant "is engaged in

---

[4] Even if the arbitration clause's class-action waiver were unenforceable, it would nevertheless be severable. *See, e.g.*, *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill.App.3d 214, 238 (2008). "[T]he strong policy in favor of enforcing arbitration agreements … is best served by allowing the valid portions of the arbitration agreement to remain in force while severing the unconscionable provision." *Id.* at 239. Here, plaintiff has failed to establish that "that severing the terms would be futile," [19] at 13.

transactions involving interstate commerce." [14-1] at 7. This proposition is supported by the declaration of defendant's Chief Financial Officer, who stated that Saint Joseph employees "order and acquire medical supplies transported from states other than Illinois." [14-1] at 3. "No elaborate explanation is needed to make evident the broad impact" of healthcare providers on the national economy. *Citizens Bank*, 539 U.S. at 58.

Because the Illinois Workplace Transparency Act is "preempted by the FAA and cannot serve as a basis to resist enforcement," plaintiff cannot rely on the state statute to oppose a motion to compel. *See Bergman v. Best Buy Co.*, 2026 WL 279288, at *8 (S.D. Ill. Feb. 3, 2026); *see also Ware v. Levy Premium Food Serv. L.P.*, 2026 WL 1005049, at *3 (N.D. Ill. Apr. 14, 2026).

## IV. Conclusion

Defendant's motion to compel arbitration, [13], is granted. The case is stayed pending arbitration.

ENTER:

Manish S. Shah
United States District Judge

Date: October 29, 2026